2012 VT 62

# Franklin County Sheriff's Office v. St. Albans City Police Department

[58 A.3d 207]

No. 11-266

Present: Reiber, C.J., Skoglund, Burgess and Robinson, JJ., and Kupersmith, Supr. J., Specially Assigned

Opinion Filed August 3, 2012

*Pietro J. Lynn* and *Sean M. Toohey* of *Lynn, Lynn & Blackman, P.C.*, Burlington, for Plaintiff-Appellant.

*Geoffrey H. Hand* and *Rebecca E. Boucher* of *Dunkiel Saunders Elliott Raubvogel & Hand PLLC*, Burlington, for Defendant-Appellee.

*James W. Barlow*, Montpelier, for Amicus Curiae Vermont League of Cities and Towns.

¶ 1. **Reiber, C.J.** In this predatory pricing suit, the Franklin County Sheriff's Office appeals the trial court's judgment in favor of the St. Albans City Police Department. The Sheriff's Office contends that the City Police Department engaged in an unfair method of competition with the intent to harm competition under the Vermont Consumer Fraud Act's (VCFA) predatory pricing provision, 9 V.S.A. § 2461c. Specifically, the Sheriff's Office argues that the City Police Department submitted an "artificially low" bid in response to the Town of St. Albans's request for proposals for law enforcement services. We affirm.

¶ 2. The City Police Department is a municipal police department located in the City of St. Albans. It handles law enforcement duties within the City and provides dispatch services to emergency response organizations in three counties. The Sheriff's Office provides a wide variety of law enforcement services to local municipalities. For the past twenty-five years, the Sheriff's Office has provided law enforcement services to the Town of St. Albans.

¶ 3. In 2007, the Town requested proposals for the provision of law enforcement services to the Town for a three-year contract. The City Police Department's bid of $766,532.25 for the first year

included the hiring of six new police officers and one-and-a-half dispatchers to provide the Town with services twenty-four hours a day, seven days a week. The Sheriff's Office's bid was lower, however, and its bid was accepted.

¶ 4. In October 2010, in anticipation of the expiration of the Sheriff's Office's contract, the Town again requested proposals for law enforcement services for a three-year contract. The Sheriff's Office's first-year bid was $642,652.97, which included services for twenty-four hours a day, seven days a week. The City Police Department's first-year bid was $486,850.99. Its proposal included staffing the combined service areas of the City and Town with between three and six patrol cars. The City Police Department also proposed hiring three fulltime officers and reassigning a fourth to cover the Town for 120 hours per week. The Department proposed using officers who already worked in the City to supply the additional forty-eight hours, so as to meet the contract's requirement of police coverage twenty-four hours a day, seven days a week. The Town selectboard considered both proposals and in an open meeting voted to award the contract to the City Police Department. The three-year term began July 1, 2011.

¶ 5. The Sheriff's Office sued the City Police Department, alleging that the Department violated the VCFA. Specifically, the Sheriff's Office claimed that the Department engaged in predatory pricing by intentionally pricing its law enforcement services in a way that would harm competition under 9 V.S.A. § 2461c. The Sheriff's Office requested an injunction and damages. The City Police Department opposed the injunction on the grounds that the claim did not meet the elements of the VCFA, the Sheriff's Office did not have standing, and the state-action immunity doctrine barred suit against the Department.

¶ 6. The trial court denied the injunction in an order dated April 27, 2011, in which the court made preliminary findings of fact and conclusions of law. The Sheriff's Office filed a motion for inter-locutory appeal. While that motion was pending, the parties filed a joint stipulation and motion for entry of final judgment, stating that the court could enter a final decision based on the findings of fact and conclusions of law in the court's April 27 order. The court entered judgment for the City Police Department, making its April 27 order the final decision on the merits.

¶ 7. The court rejected the City Police Department's argument that the Sheriff's Office lacked standing. The court acknowledged

that the statutes authorizing municipalities to enter into agreements for police services do not require a bidding process. The court concluded, however, that the Sheriff's Office acquired a legally protected interest in competing for the contract when the Town opened the procurement process for bidding. It reasoned that the VCFA applies to all activities in commerce, that the provision of police services falls within the definition of commerce, and that an alternative conclusion would "suggest that even egregious antitrust violations (e.g., price fixing) would be acceptable in what purported to be a competitive bidding process." The court also rejected the City Police Department's argument that the suit was barred by the state-action immunity doctrine, reasoning that the City Police Department was not eligible for immunity, having entered the market as a seller.

¶ 8. On the merits, however, the court agreed with the City Police Department. The court concluded that the City Police Department's conduct did not violate the VCFA because there was no intent to harm competition. The court found three legitimate reasons for the reduction between the City Police Department's 2007 and 2010 bids: (1) by 2010, the Department was fully staffed and did not have to hire and train as many new officers as it would have in 2007; (2) the Department was able to perform a better analysis of its costs and capacities by 2010 due to an additional qualified accountant in the finance office; and (3) the Department based its bid on using service zones and a cover car.[1] The court found that the use of the current City Police Department employees to concurrently provide forty-eight hours of coverage to the Town per week would not require the City to pay them overtime. Rather, the court found that police officers are generally not fully occupied during their shifts, and that "combining services for the Town and City allows both municipalities to benefit from using these existing services more efficiently." The

---

[1] The court described a service zones model as follows. Police patrols perform in overlapping assignment areas within an area that is divided into zones. Between three and six officers are on duty, depending upon the typical intensity of the shift. A shift supervisor divides the service area into two to four zones, depending on the number of officers on duty. The on-duty officers are responsible for calls in their assigned zones, but may leave the area in order to respond to an emergency or "a major incident" in another zone. The supervisor would maintain overlapping responsibility in the cover car. The court found that these operational efficiencies were made possible in part because the Town completely surrounds the City.

court also found that the contract does not require the City or its taxpayers to subsidize the Town because the City would pay its officers the same compensation regardless of whether some of its officers provide coverage to the Town. Ultimately, the court held that the City Police Department did not engage in unfair conduct by taking advantage of efficiencies made possible by geography. The court concluded that the Sheriff's Office had not proven that the City Police Department acted with any intent to harm competition, a prerequisite to a predatory pricing claim. 9 V.S.A. § 2461c. The Sheriff's Office appeals this decision.

¶ 9. The Sheriff's Office argues on appeal that the City Police Department acted unfairly by "supplementing its bid with existing, dedicated resources" and had an intent to harm competition. The Sheriff's Office also argues that the City Police Department subsidized its bid by using City police officers to deliver some Town law enforcement services, and that the court's finding to the contrary is clearly erroneous. The City Police Department contends that the elements of a VCFA claim are not present, that the Sheriff's Office does not have standing, and that its claims are barred by the state-action immunity doctrine.

¶ 10. We will uphold the trial court's findings unless clearly erroneous. V.R.C.P. 52(a)(2). Our review of the court's legal conclusions is de novo. *Charbonneau v. Gorczyk*, 2003 VT 105, ¶ 2, 176 Vt. 140, 838 A.2d 117.

¶ 11. Because it is a threshold requirement, we first address the question of standing. Vermont courts are limited to deciding actual cases or controversies. *In re Constitutionality of House Bill 88*, 115 Vt. 524, 529, 64 A.2d 169, 172 (1949) ("The judicial power, as conferred by the Constitution of this State upon this Court, is the same as that given to the Federal Supreme Court by the United States Constitution; that is, 'the right to determine actual controversies arising between adverse litigants, duly instituted in courts of proper jurisdiction.'" (quoting *Muskrat v. United States*, 219 U.S. 346, 361 (1911)). An element of the case-or-controversy requirement is that a plaintiff must have standing — that is, "must have suffered a particular injury that is attributable to the defendant and that can be redressed by a court of law." *Parker v. Town of Milton*, 169 Vt. 74, 77, 726 A.2d 477,

480 (1998). To bring a case, a plaintiff must show "(1) injury in fact, (2) causation, and (3) redressability." *Id.*[2]

¶ 12. Standing also embodies "a prudential component of self-imposed judicial limits." *Hinesburg Sand & Gravel Co. v. State*, 166 Vt. 337, 341, 693 A.2d 1045, 1048 (1997). Under the principles of prudential standing, a plaintiff's complaint must " 'fall within the zone of interests protected by the law invoked,' " which requires inquiry into the substance of a plaintiff's claim. *Id.* (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)).

¶ 13. We begin by examining the injury-in-fact element of constitutional standing — the only element at issue. The City Police Department argues that the Sheriff's Office has not suffered an injury in fact. The Sheriff's Office claims injury because it lost the bid due to the City Police Department's artificially low bid. The Sheriff's Office contends that it was unable to compete on equal ground with the City Police Department for the present contract, and that, going forward, it will not be able to compete with the City Police Department for future contracts. The Sheriff's Office alleges that the City Police Department shifted municipal resources previously dedicated solely to the City in order to underbid the Sheriff's Office, and that the City Police Department has "effectively eliminate[d] its only competitor for the delivery of law enforcement services."

¶ 14. An injury for standing purposes means the invasion of a legally protected interest, not a generalized harm to the public. *Parker*, 169 Vt. at 78, 726 A.2d at 480. The interest at issue here is the right to provide police services to the Town. Therefore, it is critical to determine if the Sheriff's Office has a right to

---

[2] The City Police Department urges that antitrust plaintiffs have a heightened burden to demonstrate standing, reasoning that litigation in an antitrust case may be used to restrain, rather than to protect, legitimate competition. See *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977) ("Plaintiffs must prove *antitrust* injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful. The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation."); see also 2 P. Areeda & H. Hovenkamp, Antitrust Law ¶ 335a (2d ed. 2000) (noting that antitrust standing "requires more than the constitutional minimum for the 'case or controversy' " requirement). Because we conclude that the Sheriff's Office does not have constitutional standing, we need not reach the issue of whether the Sheriff's Office is required to prove so-called antitrust standing.

compete for providing these services. There are several statutory provisions that impact this determination. The Legislature has created a limited number of governmental entities which are authorized to provide law enforcement services. Constables, municipal police departments, sheriffs' offices, and the Vermont State Police may provide law enforcement services within the state. See 17 V.S.A. § 2646(7) (appointment or election of constables); 24 V.S.A. § 1936a (constable law enforcement authority); 24 V.S.A. §§ 1931, 1935 (municipal police departments); 24 V.S.A. § 291a (sheriffs' departments); 20 V.S.A. §§ 1812, 1911-1915 (state police). No private actors are involved, and the Sheriff's Office conceded at oral argument that it was unaware of any law that would allow a private entity to contract to provide municipal police services. Municipalities may enter into agreements for the provision of police services. See 24 V.S.A. § 1938(a) ("Cities, towns, incorporated villages, the University of Vermont, sheriffs, and state agencies may enter into agreements to provide for intermunicipal police services.").

¶ 15. The Sheriff's Office lacks standing to assert a predatory pricing claim in part because it has no legally protected right to "fair competition" with other statutorily created government entities to provide police services to the Town. Section 1938 states that various municipalities "may" enter into agreements for the provision of police services, and does not mandate a bidding process. In construing this statute, we presume that the Legislature intended the plain and ordinary meaning of the statute. *In re Ambassador Ins. Co.*, 2008 VT 105, ¶ 18, 184 Vt. 408, 965 A.2d 486. "The plain, ordinary meaning of the word 'may' indicates that a statute is permissive, not mandatory." *Town of Calais v. Cnty. Road Comm'rs*, 173 Vt. 620, 621, 795 A.2d 1267, 1268 (2002) (mem.). Thus, municipalities have discretion to enter into agreements for the provision of law enforcement services and may choose the provider in their own manner.

¶ 16. Consequently, the Town was under no obligation to entertain bids for police services in the first instance, or to award the contract to the lowest bidder. The Town's request for proposals echoed this discretionary power, stating that "[t]he Town reserves the right to make a contract award decision based on the totality of response to this [request for proposals], past performance, and comments from Town residents received by the Selectboard." This language alerted bidders that the Town could award the contract

to any bidder for practically any reason, without imposing on the Town or the bidders any "fair procedure" requirement. Thus, neither statutory law nor the Town's request afforded the Sheriff's Office any legally protected interest.

■ ■ ¶ 17. We disagree with the trial court's conclusion that, once the Town put the contract up for bid, the Sheriff's Office was entitled to a fair procurement process through competitive bidding because providing police services is included in the VCFA definition of commerce. The VCFA prohibits engaging in predatory pricing because it is an unfair method of competition in commerce. See 9 V.S.A. §§ 2461c(a), 2453. Commerce is generally defined as the "interchange of goods and commodities, especially on a large scale." *Carter v. Gugliuzzi*, 168 Vt. 48, 54, 716 A.2d 17, 22 (1998) (quotation omitted). We conclude that no commerce existed in this case as would provide the Sheriff's Office with a legally protected interest. The subject of the bidding — i.e., the "commodity" to be provided — is a purely public function. That function, as noted, is carried out only by statutorily authorized public entities. Fundamentally, then, the provision of police services in Vermont occurs outside the realm of commerce because it involves no interchange of goods or commodities on the open market. It is a governmental function provided only by governmental entities for the benefit of the public. We therefore conclude that the Sheriff's Office has no legally protected interest because the provision of law enforcement services does not occur within commerce for the purposes of the VCFA.

■ ¶ 18. Furthermore, the claim does not meet the requirements of prudential standing, which demands that the Sheriff's Office's complaint fall within the zone of interests protected by the predatory pricing statute. See *Hinesburg Sand & Gravel Co.*, 166 Vt. at 341, 693 A.2d at 1048. Thus, we examine whether the predatory pricing statute was intended to encompass claims by one governmental entity against another outside the realm of a traditional competitive marketplace.

■ ¶ 19. The United States Supreme Court has noted that federal antitrust law "rests on the premise that the unrestrained interaction of competitive forces will yield the best allocation of our economic resources, the lowest prices, the highest quality and the greatest material progress," and that "the policy unequivocally laid down by the [federal law] is competition." *N. Pac. Ry. v.*

*United States*, 356 U.S. 1, 4 (1958). Similarly, Vermont's predatory pricing statute is designed to protect the integrity of a competitive marketplace. See 9 V.S.A. § 2461c(a) (proscribing acts that "tend[] to create or maintain a monopoly or otherwise harm[] competition"); see also *id.* § 2451 (stating that the purpose of chapter 63 is to complement enforcement of federal law concerning unfair competition).

 ¶ 20. In the context of this case, there is simply no "unrestrained interaction of competitive forces" in the Vermont law enforcement market that would require regulation by the predatory pricing statute. *N. Pac. Ry.*, 356 U.S. at 4. It is the protection of competition, rather than the protection of competitors, that antitrust laws are designed to protect, *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 110 (1986), and the statutory scheme relating to law enforcement embraces no element of competition in an open marketplace. This is because the universe of entities that can provide police services is narrowly limited to state actors, and the "market" in which the services are contracted for is wholly restricted.

 ¶ 21. More specifically, predatory pricing occurs when a firm "bites the bullet and forgoes present revenues to drive a competitor from the market," with the intent "to recoup lost revenues through higher profits when it succeeds in making the environment less competitive." *Kelco Disposal, Inc. v. Browning-Ferris Indus. of Vt., Inc.*, 845 F.2d 404, 407 (2d Cir. 1988). Predatory pricing in its orthodox form exists where a "single firm, having a dominant share of the relevant market, cuts its prices in order to force competitors out of the market, or perhaps to deter potential entrants from coming in." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 584 n.8 (1986). Here, the "competitors" are all statutorily created entities, meaning that one entity cannot lower its prices so as to put another out of business, nor can potential entrants be deterred from entering the "market" because the statutory scheme allows no new entrants. Although there is competition within a limited sphere as between the statutorily empowered entities, there is no threat of monopolization by any one of them. Thus, the Sheriff's Office's injuries alleged in the complaint do not fall within the zone of interests to be protected by Vermont's predatory pricing statute. In sum, the Sheriff's Office was not denied something in which it had a legally

protected interest, nor is its claim within the zone of interests protected by the statute, and it therefore lacks constitutional and prudential standing.

*Affirmed.*