STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT<br>Environmental Division Unit | ENVIRONMENTAL DIVISION<br>Docket No. 67-5-17 Vtec |
| 109-111 Shelburne St./97 Locust St. CU | DECISION ON MOTIONS |

Appellant Margaret Murray seeks to appeal a decision by the City of Burlington Development Review Board ("DRB") granting Champlain Housing Trust ("CHT") a conditional use permit. CHT applied to convert a former motel into apartments for homeless and marginally-housed individuals with health complications. This matter comes to us on remand from the Vermont Supreme Court. See In re 109-111 Shelburne St./97 Locust St. CU, No. 2018-046 (Vt. July 2018) (mem.). As discussed further below, the Supreme Court directs us to determine whether Ms. Murray's untimely appeal should be allowed to proceed. Id. at 3. Presently before the Court is CHT's motion to dismiss Ms. Murray's appeal, which asserts that her appeal is improper because it was untimely and she lacks standing. Also before the Court is Ms. Murray's motion for summary judgment on the issues of timeliness and standing.

Ms. Murray is represented by Stephen F. Coteus, Esq. CHT is represented by Jonathan T. Rose, Esq., and Brian S. Dunkiel, Esq. Kimberlee J. Sturtevant, Esq., represents the City of Burlington ("City").

**Legal Standard**

The timeliness of an appeal and a party's standing to bring an appeal both implicate this Court's subject matter jurisdiction. See In re Gulli, 174 Vt. 580, 583 (2002) (discussing timeliness and jurisdiction); In re Pelkey Final Plat Major Subdivision, et al., No. 172-12-12 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. July 3, 2013) (Durkin, J.) (citing Bischoff v. Bletz, 2008 VT 16, ¶ 15, 183 Vt. 235) (discussing standing and jurisdiction). Thus, we review CHT's motion under V.R.C.P. 12(b)(1) as a motion to dismiss for lack of subject matter jurisdiction, accepting all uncontroverted factual allegations as true and construing them in the light most favorable to the nonmoving party. Rheaume v. Pallito, 2011 VT 72, ¶ 2, 190 Vt. 245. This Court can consider evidence outside the pleadings when resolving such a motion. Conley v. Crisafulli, 2010 VT 38, ¶ 3, 188 Vt. 11 (citing Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)).

In regard to Ms. Murray's motion, summary judgment is only appropriate when the movant shows that there is "no genuine dispute as to any material fact" and the movant "is entitled to judgment as a matter of law." V.R.C.P. 56(a). In considering a motion for summary judgment, we accept the factual

1

allegations made in opposition to the motion as true and give the nonmovant the benefit of all reasonable doubts and inferences. In re UVM Certificate of Appropriateness, No. 90-7-12 Vtec, slip op. at 2 (Vt. Super. Ct. Envtl. Div. Feb. 26, 2013) (Walsh, J.) (citing Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15, 176 Vt. 356).

## Factual Background

This Court sets out the following facts only to decide the motions pending before us and to define the context of the present appeal. These are not factual findings, which can only occur after the Court has conducted a trial. See Fritzeen v. Trudell Consulting Eng'rs, Inc., 170 Vt. 632, 633 (2000) (citing Booska v. Hubbard Ins. Agency, Inc., 160 Vt. 305, 309 (1993)).

1. CHT is a community land trust that develops and maintains affordable housing.

2. In 2017, CHT applied for approval for its conversion of the former Bel Aire motel—located at 109-111 Shelburne Street in Burlington, Vermont—into eight apartments for homeless and marginally-housed individuals with acute medical needs ("the Project").

3. CHT also applied to the DRB for approval to modify the Project's parking lot. The new parking configuration provides spaces for the community gardens located at 97 Locust Street. While the gardens are adjacent to the Project, they are not owned by CHT.

4. The Project involved internal changes to the existing building, some minor external building changes, and minimal site work related to the parking configuration. No significant excavation or site work was proposed.

5. At no point in time have contaminated soils been identified on the Project site.

6. Ms. Murray owns a rental property at 150 Shelburne Street. Her property is on the other side of Route 7, a four-lane highway, from the Project and approximately 500 feet to the south.

7. Ms. Murray's property formerly hosted a gas-filling station, which resulted in petroleum contamination of the subsurface soils on her land. This has led to extensive testing on her property, as well as litigation. See, e.g., In re Bilmar Team Cleaners, 2015 VT 10, ¶¶ 1-2, 198 Vt. 330; Murray v. City of Burlington, 2012 VT 11, ¶ 3, 191 Vt. 597.

8. The DRB held a public hearing on CHT's application on March 8, 2017.

9. Ms. Murray attended this public hearing and spoke about her concerns: that the Project would result in an increased tax burden on nearby property owners and that the Project site should be evaluated for contaminated soils.

10. Ms. Murray did not sign the sign-in sheet that the DRB provided at the hearing to keep track of who should be notified of its decision.

11.     The DRB approved CHT's application at a deliberative meeting on March 13, 2017. The approval contained conditions that are not relevant to this appeal.

12.     Ms. Murray attended this meeting and was aware that the meeting resulted in the approval of CHT's permit.

13.     The DRB issued a written decision memorializing its approval of CHT's conditional use permit on March 17, 2017.

14.     The DRB did not send Ms. Murray a copy of its decision, nor did CHT.

15.     During the thirty-day appeal period after the DRB's approval, CHT conducted some exploratory interior demolition to evaluate the structural integrity of the building. It did not carry out any other Project work during this time period.

16.     On March 24, 2017, Ms. Murray read an article in the Burlington Free Press reporting that work on the Project was underway.

17.     After the close of the thirty-day appeal period, CHT pursued the exterior, interior, and parking construction in full.

18.     During construction, Ms. Murray did not personally observe a permit poster on the Project site or any construction that indicated to her that the DRB had approved CHT's permit.

19.     On May 15, 2017, Ms. Murray visited the City's zoning office in Burlington and, after a search of the file, obtained a copy of the DRB's written decision.

20.     Ms. Murray filed her appeal with this Court on May 26, 2017.

21.     In her notice of appeal, Ms. Murray acknowledged that the thirty-day period for filing a notice of appeal had passed.

22.     She requested permission to proceed with the appeal because the DRB did not mail her a copy of its March 17, 2017 written decision.

23.     While her request was pending before this Court, CHT completed the Project. CHT procured a certificate of occupancy on August 18, 2017.

24.     The first residents moved into the Project building at the beginning of September 2017.

25.     On December 27, 2017, this Court issued an Entry Order denying Ms. Murray permission to appeal. See In re 109-111 Shelburne St./97 Locust St. CU, No. 67-5-17 Vtec (Vt. Super. Ct. Envtl. Div. Dec. 27, 2017) (Durkin, J.).

26.     Ms. Murray appealed that decision to the Vermont Supreme Court on January 26, 2018.

27.     In a decision dated July 16, 2018, a three-justice panel of the Vermont Supreme Court reversed this Court's decision and remanded the matter back to this Court for further consideration.

3

28.     As of October 2018, the Project housed six permanent residents in five apartments, with the potential to accommodate up to seven other residents for shorter-term stays.

## Discussion

As stated above, this matter is presently before us on remand from the Vermont Supreme Court. 109-111 Shelburne St./97 Locust St., No. 2018-046 (July 2018).  Because it is undisputed that Ms. Murray filed her appeal outside of the thirty-day period that 10 V.S.A. § 8504(b)(1) and V.R.E.C.P. 5(b)(1) require for appeals, this Court, in its December 27, 2017 Entry Order, and the Vermont Supreme Court, in its review of that decision on appeal, evaluated whether Ms. Murray was entitled to proceed with her appeal under an exception to the thirty-day limit.  See id. at 1-2; see also 109-111 Shelburne St./97 Locust St. CU, No. 67-5-17 Vtec at 1-2 (Dec. 27, 2017) (denying Ms. Murray's motion for permission to proceed with the appeal).

The first alternative available to Ms. Murray was 10 V.S.A. § 8504(b)(2)(C), which requires this Court to allow an appeal if we determine that "some other condition exists which would result in manifest injustice" if the appeal was barred.  The Vermont Supreme Court stated that it was within this Court's discretion to conclude that a denial of her untimely appeal would not result in manifest injustice because Ms. Murray had actual or constructive notice of the DRB's approval through her presence at the March 13, 2017 hearing—where the DRB announced its approval of CHT's application—but failed to act right away. 109-111 Shelburne St./97 Locust St., No. 2018-046 at 4 (July 2018).

The second option left to Ms. Murray derives from V.R.A.P. 4(c), which is applicable in an appeal before this Court through V.R.E.C.P. 5(a)(2).  Under V.R.A.P. 4(c), the Court "may, upon motion, reopen the time to file an appeal" for a lack of notice if three criteria are met.  These criteria are: (1) the motion to reopen is "filed within 90 days of entry of the judgment or order or within [7] days of receipt of notice of the judgment or order, whichever is earlier"; (2) the party seeking to reopen was "entitled to notice of the entry of the judgment or order [but] did not receive that notice from the clerk or any party within 21 days of its entry"; and (3) the Court determines that "no party would be prejudiced" by reopening the appeal period.[1] V.R.A.P. 4(c).

The Vermont Supreme Court concluded that Ms. Murray met the first and second criteria of V.R.A.P. 4(c).[2] 109-111 Shelburne St./97 Locust St., No. 2018-046 at 3 (July 2018).  Because this Court did

---

[1]  V.R.A.P. 4 was amended to change the seven-day period provided for in V.R.A.P. 4(c)(1) to fourteen days, effective January 1, 2018.  See Reporter's Notes—2018 Amendment, V.R.A.P. 4 (explaining that the seven-day period was changed to fourteen days to correspond with the day-is-a-day change in V.R.C.P. 6(a)).  We apply the seven-day period that was in place at the time Ms. Murray initiated this action.

[2]  More specifically, the Vermont Supreme Court reversed this Court's conclusion that an appeal under V.R.A.P. 4(c) was not available to Ms. Murray.  This Court reasoned that the actual or constructive notice Ms. Murray

4

not reach the question of whether reopening the appeal period would cause prejudice under the third criterion, the Supreme Court remanded the matter. Id.

The Supreme Court further advised that even if this Court concludes that Ms. Murray satisfies all three criteria of V.R.A.P. 4(c), we "must exercise [our] discretion to determine whether to allow the motion to reopen." Id. at 3-4 (citation omitted); see also Mahar, 2018 VT 20, ¶ 29 ("[T]he trial court has discretion to deny a motion to reopen even where all of the requisite criteria are met.") (citations omitted).

In light of its decision to remand, the Supreme Court also declined to reach the question of Ms. Murray's standing, leaving it to this Court to consider in the first instance. 109-111 Shelburne St./97 Locust St., No. 2018-046 at 4 (July 2018) (citing In re Appeal of MDY Taxes, Inc., 2015 VT 65, ¶ 7, 199 Vt. 248).

Thus, on remand, we are directed to first consider whether reopening the appeal period for Ms. Murray would unfairly prejudice any party. If not, we must exercise our discretion and determine whether other considerations weigh against reopening the appeal period. Should we allow Ms. Murray's appeal to proceed, we must then turn to the issue of her standing.

I.      **Whether reopening the appeal period to accommodate Ms. Murray's untimely appeal would prejudice any party.**

Under V.R.A.P. 4(c)(3), this Court must consider whether any prejudice would result from granting Ms. Murray's motion to reopen the appeal period. CHT asserts that it would be prejudiced if this Court reopened the appeal period because, aside from some exploratory interior demolition to assess structural integrity, it waited to commence work on the Project until the thirty-day appeal period expired; its interior and exterior renovations were well underway by the time Ms. Murray filed her notice of appeal; it has since completed the Project, and did so while this Court was originally considering the timeliness of Ms. Murray's appeal; and the Project's formerly-homeless or marginally-housed residents have lived there for nearly two years.

The decision to reopen an appeal prejudices a party if it results in "some adverse consequence" aside from "the cost of having to oppose the appeal and encounter the risk of reversal, consequences that are present in every appeal.'" See Mahar, 2018 VT 20, ¶ 22 (citation omitted); Advisory Committee

---

received of the permit approval (through her attendance at the March 13, 2017 hearing where the DRB approved the Project) triggered the seven-day time period for filing a motion to reopen under V.R.A.P. 4(c)(1), which would have expired before she filed her notice of appeal in May 2017. The Supreme Court reversed because the seven-day period is only triggered by notice provided under V.R.C.P. 77(d), which does not include inquiry notice and which Ms. Murray did not otherwise receive. See 109-111 Shelburne St./97 Locust St., No. 2018-046 at 2-3 (July 2018) (quoting In re Mahar Conditional Use Permit, 2018 VT 20, ¶ 19 n.5).

Notes—1991 Amendment, F.R.A.P. 4.[3]  As stated in the Advisory Committee Notes to F.R.A.P. 4, "[p]rejudice might arise, for example, if the appellee had taken some action in reliance on the expiration of the normal time period for filing a notice of appeal."

Courts assessing motions to reopen have been careful to note that F.R.A.P. 4(a)(6)—V.R.A.P. 4(c)'s federal counterpart—does not include an excusable neglect standard.  See, e.g., Benavides v. Bureau of Prisons, 79 F.3d 1211, 1214 (1996).  The party moving to reopen does not need to explain or justify their tardiness.  "That is because, by supposition, [the party's] tardiness is not his [or her] fault."  Id.; cf. V.R.A.P. 4(d) (introducing an "excusable neglect or good cause" standard for motions to *extend* the time to appeal).  By the terms of the Rule, the lack of notice itself explains the delay.

Further, we conclude that V.R.A.P. 4(c) requires us to evaluate the prejudice that would result from reopening the appeal period given the present circumstances of the parties, not from the date Ms. Murray's motion was filed.  The plain language of the Rule does not qualify or toll the period during which prejudice should be assessed.  See State v. Villar, 2017 VT 109, ¶ 7, 206 Vt. 236 ("In construing a procedural rule, we look first to the rule's plain language, just as with statutory construction." (citing State v. Amidon, 2008 VT 122, ¶ 16, 185 Vt. 1)).  V.R.A.P. 4(c) requires us, unconditionally, to evaluate whether prejudice would result from reopening the appeal period at the present moment.

We also note that V.R.A.P. 4(c) is a general rule that governs appeals in a variety of legal contexts, not just appeals to this Court.  See, e.g., Coles, 2013 VT 36, ¶¶ 6-9 (applying the Rule in a child support case).  Accordingly, as with other general legal principles, we must adapt the purposes of the Rule to the unique setting of land development permitting appeals.  See, e.g., In re Application of Lathrop Ltd. P'ship I, 2015 VT 49, ¶¶ 56-66, 199 Vt. 19 (discussing the unique principles of finality that are specific to the permitting of development projects).

An applicant before this Court "constructs at its own risk during any appeal."  In re Champlain Coll., Inc. 304-306 Maple St. Dormitory Project, No. 145-7-05 Vtec, slip op. at 3 (Vt. Envtl. Ct. Apr. 17, 2017) (Wright, J.).  In other words, absent a stay, permits approved by a municipal panel take effect while an appeal is pending before this Court.  See V.R.E.C.P. 5(e) (describing automatic stays and motions to stay).  Applicants can proceed with their development while litigating an appeal, but they bear the risk of an adverse decision by this Court that invalidates the underlying permit.

---

[3]  We rely, in part, upon the corresponding federal rule and its relevant case law to guide us in our application of V.R.A.P. 4(c).  Federal cases interpreting the Federal Rules of Appellate Procedure are "an authoritative source for the interpretation of [the V.R.A.P.]" where Vermont rules adopt federal provisions.  Reporter's Notes, V.R.A.P. 1; see Coles v. Coles, 2013 VT 36, ¶ 6, 193 Vt. 605 (consulting F.R.A.P. 4 and case law interpreting it when applying V.R.A.P. 4(c) because the rules are "substantively identical," aside from an irrelevant exception); see also Reporter's Notes, V.R.A.P. 4 ("This rule is substantially identical to Federal Appellate Rule 4.").

On the basis of this principle, Ms. Murray asserts that the relative progress, or completion, of the Project should not be a factor that this Court considers in our assessment of prejudice. She argues that applicants who receive a permit that is not appealed during the thirty-day appeal period will nearly always start construction. Thus, in her view, weighing the prejudice to applicants who build after the appeal period has closed effectively forecloses relief under V.R.A.P. 4(c) for prospective appellants before this Court.

Ms. Murray's assessment is misplaced. Factoring the progress of the development into the prejudice analysis will not have the effect of nullifying V.R.A.P. 4(c) that Ms. Murray cautions against. There will be situations where a lack of notice causes an interested person to miss the opportunity to appeal and prejudice will not result from reopening the appeal period because the applicant has not begun, or is in the early stages of, development. The fact that prejudice may frequently be a factor when V.R.A.P. 4(c) is applied in the permitting context does not warrant ignoring the practical harms that allowing tardy appeals and disrupting the finality of land permitting decisions can incur.

Applying the legal considerations outlined above to the circumstances before us, we first conclude that CHT carried out its early construction activities, however limited, during the thirty-day appeal period with the same background risk as any other applicant facing the prospect of a potential appeal.[4] Before the appeal period closed, CHT faced the normal "risk of reversal" that does not qualify as prejudice under the Rule. Advisory Committee Notes—1991 Amendment, F.R.A.P. 4. No prejudice would result from reopening the appeal period if we were to only consider CHT's actions during this time.

However, CHT continued with construction after the appeal period closed without the filing of a timely appeal by any party. This Court, and the Vermont Supreme Court, have repeatedly emphasized the importance of finality in the unique context of land development. See, e.g., City of S. Burlington v. Dep't of Corr., 171 Vt. 587, 588-89 (2000) (concluding that finality prevails even where the municipal decision may be in error); In re Feeley Constr. Permits, Nos. 4-1-10 Vtec, 5-1-10 Vtec, slip op. at 13-14 (Vt. Envtl. Ct. June 16, 2010) (Wright, J.); see also 24 V.S.A. § 4472 (providing for the finality of municipal decisions when no appeal is filed). Given the need for finality in the land development context, and based

---

[4] The parties appear to dispute the extent and nature of CHT's early construction activities. CHT acknowledges that it began exploratory work during the thirty-day appeal period but asserts that it waited until the expiration of the appeal period to start working on the Project in earnest. Ms. Murray asserts that CHT does not adequately support its claim that it relied upon the expiration of the thirty-day appeal period before proceeding with the Project. To the extent the parties may dispute the degree of CHT's construction activities during this period, or the implications of the close of the appeal period for CHT's construction plan, we conclude that this dispute is not material. We focus instead on the progress CHT made on the Project after the appeal period closed without an appeal being filed.

upon CHT's subsequent construction and eventual completion of the Project, we conclude that substantial prejudice would result to CHT should we reopen the appeal period at this late date. Upon the expiration of the appeal period, CHT was entitled to proceed with construction in reliance on the finality principles.[5] See Advisory Committee Notes—1991 Amendment, F.R.A.P. 4 (stating that prejudice might result if the prevailing party took "some action in reliance on the expiration of the normal time period for filing a notice of appeal.").

By the time Ms. Murray began proceedings before this Court in May 2017, CHT had already made substantial progress on the Project. CHT has since completed the Project, and did so while this Court was considering the timeliness of Ms. Murray's appeal in the first instance. A number of residents have lived at the property for nearly two years. Accordingly, we conclude that prejudice would result if we reopened the appeal period. Since Ms. Murray cannot proceed under V.R.A.P. 4(c), this Court does not have jurisdiction over her untimely appeal and CHT's motion to dismiss must be **GRANTED**. Ms. Murray's competing motion for summary judgment is **DENIED**.

## II. Whether the appeal period should remain closed even if Ms. Murray satisfies the three factors of V.R.A.P. 4(c).

While we conclude above that Ms. Murray cannot satisfy the third factor of V.R.A.P. 4(c), we also proceed to the question of whether, if she could, this Court would exercise its discretion and decline to reopen the appeal period. We engage in the following analysis in the alternative.

It is within this Court's discretion to deny a motion to reopen the appeal period under V.R.A.P. 4(c) even if the moving party did not receive notice under V.R.C.P. 77(d), the party was entitled to such notice, and no prejudice would result. See 109-111 Shelburne St./97 Locust St., No. 2018-046 at 3-4 (July 2018) (citing Mahar, 2018 VT 20, ¶ 29); see also V.R.C.P. 4(c) ("[T]he superior court *may*, upon motion, reopen the time to file an appeal . . ." (emphasis added)).

In exercising our discretion, we "weigh any relevant factors" that might have bearing on whether the appeal period should be reopened. Mahar, 2018 VT 20, ¶ 30. While Vermont case law on this specific

---

[5] We note that under V.R.A.P. 4(c)(1), CHT could have triggered the seven-day period the Rule provides for filing motions to reopen by providing Ms. Murray with notice of the DRB's decision of its own accord. Ms. Murray appears to claim that because CHT did not so, it cannot now assert that prejudice will result from reopening the appeal period. While V.R.A.P. 4(c)(1) does provide prevailing parties with this option, it in no way obligates successful applicants to duplicate the notice that municipal panels are statutorily required to provide. See 24 V.S.A. § 4464(b) (placing the onus of informing relevant parties of municipal decisions on the municipality itself).

We further note that Ms. Murray had some responsibility for the DRB not providing her with notice of its decision, since she chose not to sign the attendance sheet at the March 13, 2017 hearing. Municipalities commonly rely upon these sign-in sheets to confirm who was in attendance and who is entitled to notice of subsequent decisions.

issue is limited, other jurisdictions have considered the factors pertinent to a discretionary decision on a motion to reopen.

The District of Columbia Circuit Court has stated that "[i]f in a particular case the movant is at fault—if the movant negligently failed to notify the clerk of his change of address, for example—then the district court may, in its discretion, deny relief under [the companion federal Rule]." Benavides, 79 F.3d at 1214. Additionally, in In re WorldCom, Inc., the Second Circuit stated that:

> Rule 4(a)(6) was expressly amended in 2005 to make clear that the fourteen-day deadline to move for Rule 4(a)(6) relief is triggered only if and when the litigant receives formal notice of entry under Civil Rule 77(d), which as we have held did not occur here. *See* Fed.R.Civ.P. 4 advisory committee's note to the 2005 amendments. But it is equally clear that a district court may consider a litigant's diligence to some degree in its exercise of discretion under Rule 4(a)(6). A litigant who never receives Civil Rule 77(d) notice but becomes fully aware of the judgment a month after entry could not be entitled to a favorable exercise of discretion if without justification he fails to move for Rule 4(a)(6) relief until just before the 180–day deadline.

708 F.3d 327, 340 n.68 (2013).

We rely on this precedent, in combination with the purpose of V.R.A.P. 4(c) of "eas[ing] strict sanctions now imposed on appellants whose notices of appeal are filed late because of their failure to receive notice of entry of a judgment," to conclude that relief under the Rule is not appropriate when the failure to receive notice or the delay in filing is caused by the appellant. See Reporter's Notes—1996 Amendment, V.R.A.P. 4 (citing Advisory Committee Notes—1991 Amendment, F.R.A.P. 77(d)).

Ms. Murray had actual or constructive notice of the DRB's approval of the Project through her attendance at the March 13, 2017 DRB hearing where the DRB announced that approval. Based on this notice, this Court has already concluded that Ms. Murray's untimely appeal should not be permitted under 10 V.S.A. § 8504(b)(2) because no manifest injustice would result from a denial of her appeal. 109-111 Shelburne St./97 Locust St. CU, No. 67-5-17 Vtec at 2 (Dec. 27, 2017). Implicit in our decision was the conclusion that she did not adequately justify the delay between her receipt of actual notice and her tardy filing of the notice of appeal. As noted previously, the Vermont Supreme Court considered this Court's conclusion that denial of Ms. Murray's appeal would not result in manifest injustice to be within our discretion.[6] 109-111 Shelburne St./97 Locust St., No. 2018-046 at 4 (July 2018).

---

[6] While the Vermont Supreme Court stated that this Court "did not abuse its discretion in concluding that . . . it would not be manifestly unjust to disallow her untimely appeal," it also introduced this holding by stating "[t]he issue of whether there was a separate basis to allow an appeal to prevent manifest injustice will be reached on remand only if the Environmental Division denies the motion to reopen." 109-111 Shelburne St./97 Locust St., No. 2018-046 at 4 (July 2018). We interpret this as an affirmation of our decision on the manifest injustice question, with the Supreme Court noting that it did not strictly need to reach the question because of the remand. See, e.g.,

We apply the same reasoning when exercising our discretion under V.R.A.P. 4(c) to deny Ms. Murray's motion to reopen the appeal period. We are sensitive to the fact that our decision will deprive Ms. Murray of a hearing on the merits of her appeal. She did not receive formal written notice under V.R.C.P. 77(d). However, Ms. Murray contributed to the DRB's failure to properly provide her with formal notice, since she chose not to sign the attendance sheet. Without her sign-in, the DRB staff had little way of understanding that she was entitled to notice.

Further, Ms. Murray knew that the Project could proceed before the DRB issued its written decision, since the DRB announced its approval of the permit application at the hearing that Ms. Murray attended. She also admitted to reading a newspaper article stating that the Project was underway. See 109-111 Shelburne St./97 Locust St. CU, No. 67-5-17 Vtec at 2 (Dec. 27, 2017). She cannot leverage the DRB's procedural error, which was obviated by the alternative notice she did receive, to initiate an appeal that was late by a number of weeks. To conclude otherwise would elevate form over substance.

Further, the completed Project presently provides affordable housing. Some of the residents have lived there for nearly two years. The Project also supplies short-term housing for those with acute medical concerns for whom shelter, even on a temporary basis, is a significant boon. To return such a completed and functioning housing project to the beginning of the appeals process, when the sole party in opposition was aware of its approval from the start, contradicts the principles underlying V.R.A.P. 4(c).

Based on our discretionary weighing of the relevant factors, this Court would decline to reopen the appeal period even if Ms. Murray satisfied the three factors of V.R.A.P. 4(c). This conclusion provides alternative grounds for granting CHT's motion to dismiss and denying Ms. Murray's motion for summary judgment.

### III. Whether Ms. Murray has standing to appeal.

Even in light of our above conclusions, we address the issues surrounding standing. Ms. Murray's standing has been before this Court since the beginning of this matter and the parties have had a full and

In re Taft Corners Assocs., 160 Vt. 583, 593 (1993) (reaching issues likely to recur on remand in the interest of judicial economy).

However, to the extent the Supreme Court directs us to return to the manifest injustice question, having addressed the V.R.A.P. 4(c) issues, we incorporate by reference our prior decision that no manifest injustice would result from a denial of Ms. Murray's request that her appeal be allowed to proceed, as well as the reasoning supporting it. See 109-111 Shelburne St./97 Locust St. CU, No. 67-5-17 Vtec at 1-2 (Dec. 27, 2017). We consider this appropriate as no new evidence or arguments have supervened to undermine our prior rationale. Further, our above analysis of the V.R.A.P. 4(c) questions does not refute, but in fact supports, our prior conclusion on the separate legal issue of whether Ms. Murray will suffer manifest injustice if she is not allowed to proceed with her appeal.

fair opportunity to present their arguments on the issue.[7] Thus, in the alternative, we also reach the question of her standing to fulfill our obligation of ensuring "summary and expedited proceedings consistent with a full and fair determination in every matter" before the Court. V.R.E.C.P. 1.

This Court's jurisdiction only extends to "actual cases or controversies." Franklin Cnty. Sheriff's Office v. St. Albans City Police Dep't, 2012 VT 62, ¶ 11, 192 Vt. 188 (citing In re Constitutionality of House Bill 88, 115 Vt. 524, 529 (1949)). The existence of a case or controversy depends, in part, on whether the appellant "is suffering the threat of actual injury to a protected legal interest, or is merely speculating about the impact of some generalized grievance." Parker v. Town of Milton, 169 Vt. 74, 77 (1998) (quoting Town of Cavendish v. Vt. Pub. Power Supply Auth., 141 Vt. 144, 147 (1982)).

The statutes defining the requirements for standing before this Court import and supplement the traditional standing requirements applicable to all Vermont courts, including the injury-in-fact requirement. See In re Lowre Variance, No. 19-2-11 Vtec, slip op. at 4-5 (Vt. Super. Ct. Envtl. Div. Oct. 31, 2011) (Durkin, J.); 24 V.S.A. § 4471; 24 V.S.A. § 4465; see also 10 V.S.A. § 8504(b). Pursuant to 24 V.S.A. § 4471(a), a party that qualifies as an "interested person" who participated before the municipal panel in the proceeding below has standing to appeal acts or decisions of that municipal panel to this Court. See also 10 V.S.A. § 8504(b).

24 V.S.A. § 4465(b) sets out the characteristics of "interested persons." Relevant here, under § 4465(b)(3), a party who is not the owner of the subject property must satisfy three requirements to have appellant standing. First, the party must own or occupy property in the immediate neighborhood of the subject property. 24 V.S.A. § 4465(b)(3). Second, the party must be able to "demonstrate a physical or environment impact" to his or her interests, effectively an injury-in-fact, "under the criteria reviewed" by the municipal panel in reaching its decision. Id. Lastly, the party needs to take the position that the act or decision of the municipal panel, "if confirmed," will not "accord with the policies, purposes, or terms of the plan or bylaw of that municipality." Id.

The parties do not dispute that Ms. Murray participated before the DRB. Instead, CHT asserts that Ms. Murray cannot identify a particularized physical or environmental impact to her interests sufficient to confer standing under the second factor of § 4465(b)(3). Further, CHT argues that contamination testing is controlled by the Vermont Agency of Natural Resources ("ANR") and, because

---

[7] CHT argues that Ms. Murray does not have standing in its V.R.C.P. 12(b)(1) motion to dismiss. Ms. Murray defends her standing in a memorandum in opposition to the motion to dismiss, and also moves for this Court to confirm her standing under V.R.C.P. 56. Accordingly, we proceed with our analysis with the standards for each type of motion, as articulated above, in mind.

the DRB did not have the authority to address a need for testing in its permit review, any impacts related to a deficiency in testing are not impacts "under the criteria reviewed."

While Ms. Murray does not need to definitively prove an injury at this pre-trial stage of the proceedings, she must offer evidence sufficient to show the "reasonable possibility" of "a non-speculative" physical or environmental impact to her interests. In re Equinox Sq. Assocs. Change of Use Permit, No. 64-5-14 Vtec, slip op. at 4 (Vt. Super. Ct. Envtl. Div. Oct. 31, 2014) (Durkin, J.) (citing UVM Certificate, No. 90-7-12 Vtec at 12 (Feb. 26, 2013)). Generalized grievances that do not affect a party's interests in a way that is distinct from the impacts to the municipality's citizenry more broadly do not meet this requirement. In re Town Meadow, LLC, No. 110-5-06 Vtec, slip op. at 3, 4 n.3 (Vt. Envtl. Ct. Sept. 25, 2006) (Wright, J.); see also Riverview Mews, LLC v. Richard Elec., No. 215-11-17 Vtec, slip op. at 5 (Vt. Envtl. Ct. Apr. 7, 2008) (Wright, J.).

Ms. Murray's appeal relies on her assertion that her property was subjected to more intensive soil testing than the Project site. She claims that this demonstrates the DRB applied the City of Burlington Comprehensive Development Ordinance ("Ordinance") inconsistently. This is the type of generalized grievance that does not support standing. See In re Vt. Transco LLC Subdivision, No. 32-3-18 Vtec, slip op. at 2 (Vt. Super. Ct. Envtl. Div. Oct. 17, 2018) (Walsh, J.) (dismissing the appellant because the injury he asserted was based on "upset taxpayer expectations" resulting from the municipal panel's improper application of the ordinance). Without a particularized injury, Ms. Murray cannot here assert that the permit is invalid because the DRB did not apply the Ordinance properly and ANR subjected her property to a more intensive contaminant testing regime.

To the extent her claim relies on impacts to her property from alleged contaminated soils at the Project site, Ms. Murray has not demonstrated that it is reasonably possible that CHT's permitted work disturbed the soils on the Project site such that contaminants, if there are any, affected, or will affect, her property. First, the Project did not involve excavation. The only activity potentially disturbing soils was the surface-level parking reconfiguration. Further, Ms. Murray speculates as to the presence of contaminants at or around the Project site, but she provides no specific evidence to support her speculation. She also lives across Route 7—a four-lane highway—and multiple houses down from the Project site. Additionally, while not dispositive, CHT completed the Project nearly two years ago and Ms. Murray has not advanced evidence of any supervening impacts.

For these reasons, we conclude that Ms. Murray does not satisfy the requirements of 24 V.S.A. § 4465(b)(3) that are necessary to her appellant standing.[8] Therefore, even if we had granted Ms. Murray's motion on the prejudice and discretion issues discussed above, we would be compelled to grant CHT's motion to dismiss her as a party and to deny Ms. Murray's motion for summary judgment on her standing.

## Conclusion

As described in detail above, we conclude that CHT would be prejudiced if this Court reopened the appeal period. Because a V.R.A.P. 4(c) motion is only viable if no prejudice would result, we cannot reopen the appeal period. Without a timely appeal, this Court lacks jurisdiction. Thus, we **GRANT** CHT's motion to dismiss and **DENY** Ms. Murray's motion for summary judgment.

Further, even if we had concluded that no prejudice to CHT would result, it is within our discretion to decline to reopen the appeal period, even when all three factors of V.R.A.P. 4(c) are met. Because Ms. Murray had actual notice of the permit approval before construction began and CHT completed and opened the Project nearly two years ago, we decline to reopen to accommodate her untimely appeal. This provides alternative grounds for granting CHT's motion to dismiss and denying Ms. Murray's motion for summary judgment.

Finally, even if this Court did reopen the appeal period, we would be obligated to dismiss Ms. Murray for lack of standing because she has not demonstrated the reasonable possibility of a physical or environmental impact on her interests. This provides another alternative basis for granting CHT's motion and denying Ms. Murray's motion.

Because Ms. Murray was the only appellant appearing in this matter, the foregoing conclusions resolve the matter before this Court. A Judgment Order accompanies this Decision.

Electronically signed on May 10, 2019 at Montpelier, Vermont, pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Superior Judge
Environmental Division

---

[8] Because of this conclusion, we do not reach the question of whether the impacts Ms. Murray alleges are impacts "under the criteria reviewed" by the DRB below.