22-2066-cv
*Picket Fence Preview v. Zillow*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.   WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").   A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 31st day of July, two thousand twenty-three.

Present:
>    GUIDO CALABRESI,
>    EUNICE C. LEE,
>    ALISON J. NATHAN,
>        *Circuit Judges.*
_____

PICKET FENCE PREVIEW, INC.,

>        *Plaintiff-Appellant,*

>    v.                                                    22-2066-cv

ZILLOW, INC.,

>        *Defendant-Appellee.*
_____

| | |
|---|---|
| For Plaintiff-Appellant: | THOMAS C. NUOVO, Bauer Gravel Farnham, LLP, Colchester, VT. |
| For Defendant-Appellee: | HEATHER P. LAMBERG (Lauren Gailey, *on the brief*), Winston & Strawn LLP, Washington, D.C. |

1

Appeal from a judgment of the United States District Court for the District of Vermont (Reiss, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Picket Fence Preview ("Picket Fence") appeals from an order of the district court granting Defendant-Appellee Zillow, Inc.'s ("Zillow") motion to dismiss under Fed. R. Civ. P. 12(b)(6). Picket Fence alleges that Zillow violated the Vermont Consumer Protection Act ("VCPA"), Vt. Stat. Ann. tit. 9, § 2451 et seq., and the Lanham Act, 15 U.S.C. § 1125. On appeal, Picket Fence urges this Court to reverse, arguing that the district court erroneously dismissed its claims of unfair competition, predatory pricing, and false advertising. We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal.

Picket Fence is a For-Sale-By-Owner ("FSBO") "publication business" that permits private homeowners to list available properties directly to potential buyers in exchange for a fee. Joint App'x. at 8. Zillow is a real estate service that provides an "online portal" for the advertisement of property and realtor services to "the general public." *Id*. Unlike Picket Fence, however, Zillow advertises that it permits FSBO property listings on its website for free. Picket Fence alleges that these Zillow advertisements are "factually false," *id*. at 10, for two interrelated reasons. First, Picket Fence alleges that Zillow "engineered its site" such that after a seller would post a FSBO listing, Zillow would "divert potential buyers to its paying Premier Agents." *Id*. at 11. Zillow purportedly did so by "stripp[ing] out all contact information" for a FSBO listing's owner, *id*. at 10, or by posting the FSBO owner's contact information beneath an advertisement for a Premier Agent's services, *id*. at 12, which induced potential buyers into paying additional charges. Second, Picket Fence alleges that such diversion renders the FSBO advertisement false because a

FSBO advertisement, according to Picket Fence, is "one that allows a person to advertise their property so that potential buyers can see the advertisement and contact the owner/seller directly *without the use of a third party intermediary*." *Id*. at 9 (emphasis added). Thus, by allegedly making Premier Agents a part of the transaction, Zillow was falsely advertising that it permitted FSBO listings for free. As a result, Picket Fence claims that it "lost market share, customers[,] and money" because Zillow's "false promise" directed potential FSBO sellers and buyers away from using Picket Fence's services. *Id*. at 14. For these injuries, Picket Fence brings consumer protection and predatory pricing claims under the VCPA, and an unfair competition claim under the Lanham Act.

This Court "review[s] *de novo* a district court's order dismissing a complaint on the pleadings and accept[s] as true all facts alleged in the complaint." *Novak v. Kasaks*, 216 F.3d 300, 305 (2d Cir. 2000). When determining the sufficiency of a plaintiff's claim for Rule 12(b)(6) purposes, "we must accept as true all nonconclusory factual allegations in the complaint and draw all reasonable inferences in the Plaintiffs' favor." *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Picket Fence first argues that Zillow's advertising Premier Agent services beneath FSBO listings constituted unfair competition and deceptive practices in violation of VCPA § 2453(a).[1]

---

[1] Picket Fence alleges it has standing to sue Zillow for unfair competition and deceptive practices under the VCPA. Zillow says that only consumers, and not competitors, have standing to bring such claims. Because we decide that even if Picket Fence had standing, its claim fails on the merits, we need not address this question. *See Lexmark Int'l Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 & n.4 (2014) (reflecting the proposition that statutory standing is not a jurisdictional issue, and we need not address the question if there are other valid grounds for dismissal). For the same reason, certification to the Vermont Supreme Court, as requested by Picket Fence, is inappropriate.

To bring an unfair competition or deceptive practices claim under § 2453(a): "(1) there must be a representation, omission, or practice likely to mislead consumers; (2) the consumer must be interpreting the message reasonably under the circumstances; and (3) the misleading effects must be material, that is, likely to affect the consumer's conduct or decision regarding the product." *Carter v. Gugliuzzi*, 716 A.3d 17, 23 (Vt. 1998). In Vermont, "[d]eception is measured by an objective standard focusing on risk of consumer harm in a particular case." *Peabody v. P.J.'s Auto Vill., Inc.*, 569 A.2d 460, 462 (Vt. 1989) (internal quotation marks omitted).

Here, according to Picket Fence, the alleged risk of deception is two-fold: First, that a FSBO seller would interpret Zillow's advertisement as a guarantee that, in addition to listing their property for free on Zillow's website, no real estate agent could represent a potential buyer or be involved in any part of the potential transaction. Second, that because FSBO sellers use Zillow's website—rather than Picket Fence's—based on that promise, the misleading advertisement results in unfair competition. We disagree with this contention because Zillow's advertisement would not mislead a consumer who was interpreting the message reasonably. Zillow simply advertises that FSBO sellers can post for free, and that is true. In other words, Zillow did *not* represent to consumers that Premier Agents would not be involved in FSBO transactions, nor that FSBO buyers would not incur transaction costs. Indeed, Picket Fence's theory of deception fails because it is based solely on its own (unreasonable) interpretation of a FSBO. The Complaint also states that sometimes buyers of FSBO properties have agents—a further indication that such an understanding is a perfectly reasonable one. *See* Joint App'x. at 9 (providing a definition of a FSBO as one in which the owner "*sometimes* avoids paying a commission to a buyer's agent" (emphasis added)). Accordingly, Zillow's advertisement was not likely to mislead a consumer

4

interpreting it *reasonably*, and thus Picket Fence cannot meet the first two *Carter* prongs.[2] Its VCPA § 2453(a) claim therefore fails.

Picket Fence next brings a predatory pricing claim, arguing that Zillow violated VCPA § 2461c(a) "by offering FSBO advertisements for free to the public with the intent to harm [ ] competition and recover its assets by intentionally diverting inquiries to paying Premier Agents." Appellant's Br. at 32. Section 2461c(a) states that: "No person, with the intent to harm competition, shall price goods or services in a manner that tends to create or maintain a monopoly or otherwise harms competition." 9 Vt. Stat. Ann. tit. 9, § 2461c(a).

"Predatory pricing occurs when a firm 'bites the bullet and forgoes present revenues to drive a competitor from the market,' with the intent 'to recoup lost revenues through higher profits when it succeeds in making the environment less competitive.'" *Franklin Cnty. Sheriff's Off. v. St. Albans City Police Dep't*, 58 A.3d 207, 214 (Vt. 2012) (quoting *Kelco Disposal, Inc. v. Browning–Ferris Indus. of Vt., Inc.,* 845 F.2d 404, 407 (2d Cir. 1988)). Thus, the practice "exists where a 'single firm, having a dominant share of the relevant market, cuts its prices in order to force competitors out of the market, or perhaps to deter potential entrants from coming in.'" *Id*. (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 584 n.8 (1986)). To bring a predatory pricing claim, a plaintiff must prove (1) "that the prices complained of are below an appropriate measure of its rival's costs" and (2) "that the competitor had a reasonable prospect . . . of recouping its investment in below-cost prices." *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 222–24 (1993).

The district court properly dismissed Picket Fence's predatory pricing claim because it fails

---

[2] Because Picket Fence cannot meet *Carter*'s first two prongs, we need not reach whether it meets the third.

5

to meet either of *Brooke Group*'s requirements. As to the first factor, and for the reasons discussed by the district court, Picket Fence fails to adequately allege that Zillow's FSBO listings are below its costs. *See* Joint App'x. at 50 n.3 (noting that Picket Fence's allegation that Zillow's "listing services must be below cost because they are free" is not reflected in the Complaint, as it must be). But, even if Picket Fence could meet the first *Brooke Group* factor, it almost certainly fails to meet the second. *See id.* at 50–51 (Picket Fence "does not claim that [Zillow] has a dangerous probability of recouping its investment by raising the price of FSBO listings in the future. The FAC contains no allegation that [Zillow]'s source of income or pricing methodology will change once competition has been eliminated from the market."). The Complaint alleges that Zillow recoups its profits by diverting buyers to Premier Agent services. However, it does not allege that this practice harms consumers or overall competition. For example, Picket Fence does not claim that Zillow's pricing scheme will change once it has eliminated competition from the market, that there has or will be adverse consumer impact (such as a decrease in profits for FSBO sellers), or that consumers are foreclosed from using competitor's products. Instead, Picket Fence alleges that Zillow is engaging in predatory pricing merely because its free FSBO listings policy has negatively impacted *Picket Fence's* business, not consumers. But "[i]t is the protection of competition, rather than the protection of competitors, that antitrust laws are designed to protect." *Franklin Cnty.*, 58 A.3d at 214. Thus, Picket Fence fails to state a predatory pricing claim.

Picket Fence's final argument on appeal is that Zillow's FSBO advertisements were unfair methods of competition in violation of the Lanham Act. As noted *supra*, Picket Fence defines FSBO advertising to include a presumption of no agent (or other intermediary) involvement, and Picket Fence claims that this is "a definition commonly accepted in the community." Appellant's

6

Br. at 35.  It further contends that because Zillow "inserts itself" into the FSBO process, "the ad is no longer what the community considers to be a FSBO advertisement," *id*., and thus Zillow's FSBO advertisements are deceptive.  Picket Fence relatedly argues that because "[t]he expectation of a [FSBO seller] in posting [a listing] for their property is that anyone seeing the advertisement will be able to contact them directly and inquire about purchasing the property," these sellers "were not aware of the redirection and deception that Zillow was engaging in."  *Id*. at 39 (internal quotation marks omitted).  Thus, Zillow's false advertisements "harmed Picket Fence because it took potential customers away from [Picket Fence's] legitimate FSBO advertisements," and therefore violated the Lanham Act.  *Id*. at 43.

"To prevail on a Lanham Act false advertising claim, a plaintiff must establish that the challenged message is (1) either literally or impliedly false, (2) material, (3) placed in interstate commerce, and (4) the cause of actual or likely injury to the plaintiff."  *Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH*, 843 F.3d 48, 65 (2d Cir. 2016).  A message is literally false "[i]f the words or images, considered in context, necessarily imply a false message," and they do so unambiguously.  *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 158 (2d Cir. 2007).  A finding that a message is literally false also means that "no extrinsic evidence of consumer confusion is required."  *Id*.  An impliedly false message, however, is one that "is nevertheless likely to mislead or confuse consumers," as it leaves "an impression" that "conflicts with reality."  *Id*. at 153 (internal quotation marks omitted).  An implied falsity claim can be supported either "by extrinsic evidence of consumer confusion," or "by evidence that the defendant intended to deceive the public through deliberate conduct of an egregious nature, in which case a rebuttable presumption of consumer confusion arises."  *Church*, 843 F.3d at 65 (internal quotation marks omitted).

The Lanham Act claim is unavailing. There can be no real argument that Zillow's FSBO advertisements were literally false because, as advertised, Zillow allows FSBO sellers to post listings to its website for free. Thus, Picket Fence's claim reduces to whether it sufficiently alleges that Zillow's FSBO advertisements were impliedly false because Zillow does not entirely foreclose the participation of a Premier Agent in a given FSBO transaction. In support of the advertisements being impliedly false, the Complaint alleges the following regarding customer confusion:

> Picket Fence had former Zillow For Sale By Owner customers complain about the deception on Zillow and specifically said had they known the truth about how Zillow operated its website and their For-Sale-By-Owner advertisements, they would have chosen to advertise with Picket Fence. Picket Fence is aware that For-Sale-By-Owners would ch[o]ose a free advertisement . . . since they assumed a free advertisement [ ] would be a cheaper alternative.

Joint App'x at 26 (First Am. Compl. ¶¶ 103–04). But these vague allegations are conclusory and lack supporting details. *See Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013) ("we are not required to credit conclusory allegations or legal conclusions couched as factual allegations"). And, as discussed by the district court, the Complaint nonetheless fails to plead implied falsity, as Zillow is not alleged to have required FSBO sellers to use an agent during a sale, nor did Zillow promise that an agent would not be involved. *See* Joint App'x at 55. For these reasons, Picket Fence fails to plead a Lanham Act violation.

We have considered Picket Fence's other arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

8