Filed 05/20/26

VERMONT SUPERIOR COURT
Chittenden Unit
175 Main Street
Burlington VT 05401
802-863-3467
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 25-CV-05286

| | |
|---|---|
| WILLIAM OETJEN AND JEFFREY COMSTOCK,<br>　　　Plaintiffs<br><br>　　　v.<br><br>CITY OF BURLINGTON,<br>　　　Defendant | DECISION ON MOTION |

## RULING ON DEFENDANT'S MOTION TO DISMISS

This action involves a challenge to Defendant City of Burlington's Board for Registration of Voters ("BRV"), which is tasked by the City's charter with duties relating to the preparation and maintenance of its voter checklists. Plaintiffs William Oetjen and Jeffrey Comstock assert claims for declaratory relief and mandamus against the City of Burlington ("the City" or "Burlington") based on its failure to appoint them to the BRV pursuant to a request made in September 2025. The City has filed a motion to dismiss pursuant to Rules 12(b)(1) and (6) of the Vermont Rules of Civil Procedure. Plaintiffs are represented by Attorneys Brady Toensing, Esq. and Matthew D. Hardin, Esq. and the City is represented by Assistant City Attorney Erik Ramakrishnan, Esq. For the reasons discussed below, the City's motion is DENIED as to Rule 12(b)(1) and GRANTED as to Rule 12(b)(6).

### Factual Background

For purposes of deciding the instant motion, the Court accepts the following facts alleged in Plaintiff's Complaint and the attached documents as true. The Court makes no finding as to their accuracy.[1]

William Oetjen and Jeffrey Comstock are United States citizens and registered voters in Burlington. Mr. Oetjen is the Chairman of the Burlington Republican Party and Mr. Comstock is a member of the Republican party. Burlington's charter provides that the BRV shall perform certain election-related duties that otherwise would be performed by the Board of Civil Authority

---

[1] *See Montague v. Hundred Acre Homestead, LLC*, 2019 VT 16, ¶ 10, 209 Vt. 514 ("On a motion to dismiss, the court must assume that the facts pleaded in the complaint are true and make all reasonable inferences in the plaintiff's favor." (citation omitted)). The Court does not accept as true "conclusory allegations or legal conclusions masquerading as factual conclusions." *Vitale v. Bellows Falls Union High Sch.*, 2023 VT 15, ¶ 28, 217 Vt. 611 (quotation omitted).

in other municipalities. Currently, the BRV is composed of 12 members: five Democrats, four Progressives, two Independents, and one Republican. In 2021, upon request made by the Burlington Republican Party Chairman, the Burlington City Council appointed two Republicans to the BRV who had been proposed by the Party.

In 2025, one of two Republicans on the BRV resigned and was replaced with a Democrat. In September 2025, Mr. Oetjen sent a letter requesting that the City appoint Mr. Comstock and himself to the BRV, pursuant to 17 V.S.A. § 2143. On November 4, 2025, the City Attorney's Office replied to Oetjen by email declining his request and explaining that 17 V.S.A. § 2143 does not apply to the BRV.

On November 25, 2025, Plaintiffs filed the instant Complaint, seeking (1) a declaratory judgment that 17 V.S.A. § 2143 applies to the BRV such that they are entitled to be placed on that board and (2) a writ of mandamus, pursuant to Rule 75, requiring the City to place them on the BRV.

Discussion

"The purpose of a motion to dismiss is to test the law of the claim, not the facts which support it." *Powers v. Office of Child Support*, 173 Vt. 390, 395, 795 A.2d 1259, 1263 (2002) (citation omitted). "[W]here the plaintiff does not allege a legally cognizable claim, dismissal is appropriate." *Montague*, 2019 VT 16, ¶ 11 (citation omitted). "Rule 12(b)(1) allows a court to dismiss an action for lack of subject matter jurisdiction, including lack of standing, while Rule 12(b)(6) allows dismissal for failure to state a claim upon which relief can be granted." *Hous. Our Seniors in Vt. Inc. v. Agency of Com. & Cmty. Dev.*, 2024 VT 12, ¶ 8, 219 Vt. 80; *see also id*. ¶ 9 (explaining that "the former determines whether the plaintiff has a right to be in the particular court and the latter is an adjudication as to whether a cognizable legal claim has been stated" (quotation omitted)). When considering a motion alleging both Rule 12(b)(1) and 12(b)(6) grounds, the Court assumes the truth of the facts alleged, making all reasonable inferences in the plaintiffs' favor. *Id*. ¶ 10.

I.     Rule 12(b)(1) Motion.

The City argues that Plaintiffs lack standing to bring this action because they do not allege that they applied to serve on the BRV before the City Council and Mayor made appointments to the BRV in August 2025 and they have not exhausted their administrative remedies. Mot. at 11. The Court disagrees. The gravamen of Plaintiffs' complaint here is the assertion that 17 V.S.A. § 2143 applies to the BRV and requires that the board have three Republican members. Plaintiffs allege that they followed the procedure established by § 2143 (discussed in more detail below), and they attach Mr. Oetjen's September 2025 letter to the City with their applications seeking appointment to the BRV to the Complaint as Exhibit 1. Pls.' Compl. ¶ 17. However, Plaintiffs allege that the City improperly failed to appoint them to sit on the BRV. This is sufficient to allege standing. *See Hous. Our Seniors in Vt. Inc.*, 2024 VT 12, ¶ 13 ("To establish standing, plaintiffs must at an irreducible minimum demonstrate the

following constitutional elements: (1) injury in fact, (2) causation, and (3) redressability." (quotation omitted).[2]  Accordingly, the City's Rule 12(b)(1) motion is denied.

> II.  Rule 12(b)(6) Motion.

At bottom, this case involves a pure question of law: Does 17 V.S.A. § 2143, which addresses the composition of the local "board of civil authority" and provides that a major political party with fewer than three members on the board may compel the governing authority to appoint additional member(s) for purposes of election activities, apply to Burlington's Board for Registration of Voters?  Before the Court turns to this question, a brief review of the relevant statutory provisions concerning Boards of Civil Authority ("BCAs"), as well as Burlington's system governing the conduct of elections, provides helpful context and background.

There is no single definition of a "Board of civil authority" under Vermont law.  Rather, the legislature defines BCAs differently for cities, towns, and villages, and only by reference to the composition of members.  For example, a city's BCA includes "the mayor, aldermen, city clerk, and justices residing therein" if not "otherwise provided by municipal charter."  17 V.S.A. § 2103(5).  Here, Burlington's municipal charter states that its BCA is composed of "[t]he City Council with Mayor presiding."  24 App. V.S.A. ch. 3 § 43(a)(1) (hereinafter referred to as "City Charter § __").  The Mayor and the City Councilors are all elected positions.  City Charter § 3.

In addition, BCAs have many statutory duties under Vermont law.  For example, the BCA hears property tax appeals and abatement requests.  *See* 24 V.S.A. § 1533; 32 V.S.A. § 4404.  As relevant here, BCAs perform a variety of functions relating to elections.  Among other duties, the BCA "shall determine whether any person who has applied to be registered to vote meets the requirements" set forth in § 2121.  17 V.S.A. § 2146.  It "shall have charge of the conduct of elections within the political subdivision for which it is elected," *id*. § 2451(a), and a "quorum of the board of civil authority shall be available at all times when the polls are open," *id*. § 2451(c).  The members of a BCA who are present at a polling place "shall constitute a quorum for the transaction of business relating to the conduct of the election and the qualification and registration of voters at [that] polling place."  *Id*. § 2451(c).

Burlington's charter creates a more complex system for administering elections, and assigns the typical election duties of the BCA to other boards and official positions.  Burlington is divided into four electoral districts, and each district is comprised of two wards.  City Charter § 2.  Under the charter, each ward has designated ward officers, which consist of a clerk and three inspectors of election.  *Id*. § 10.  Inspectors of election are required to "be present, preside, and preserve order at all elections in their respective wards, [and] to decide all questions relative to the right of any person to vote at such election."  *Id*. § 21.  In addition, inspectors of election are tasked with sorting and counting the ballots and publicly announcing the results.  *Id*.  Ward clerks and inspectors of election are chosen by the legal voters of each ward during the annual

---

[2] The Court notes that mandamus review is available under Rule 75 so long as the act or refusal to act was by a political subdivision of the state and review would have been available under the extraordinary writ of mandamus prior to the enactment of Rule 75.  *Rheaume v. Pallito*, 2011 VT 72, ¶ 5, 190 Vt. 245.

City election. *Id*. § 10(b)(1). A ward's three inspectors of election "may not be members of the same political party." *Id*. § 10(a)(1). If they are from the same party, "the City Council shall forthwith appoint an inspector who shall serve instead of the candidate who received the third largest number of votes." *Id*.

In addition to ward officers and inspectors of election, Burlington created the BRV to prepare checklists of voters for use in annual or special elections. *Id*. § 43(a)(1). The BRV consists of twelve members, and no more than six members "shall at any one time be from the same political party." *Id*. § 43(a)(1)-(2). Members of the BRV serve five-year terms, and vacancies are appointed by the City's BCA. *Id*. § 43(b). Before any such election, "it shall be the duty of the [BRV] to prepare full and complete lists of the voters in the respective wards or City districts of said City, and to certify the same to the Chief Administrative Officer." *Id*. § 14. Copies of such lists are publicly posted in advance of the election. *Id*. The BRV must specify a time and place when it will meet to make additions to the list of voters, or alterations or corrections to the list. *Id*. § 15. True copies of the BRV's final checklists are delivered to the inspectors of election in the various wards, and "no person whose name is not on such lists shall be allowed to vote at any such election." *Id*. § 18.

"When interpreting statutes, the bedrock rule of statutory construction is to determine and give effect to the intent of the Legislature." *Delta Psi Fraternity v. City of Burlington*, 2008 VT 129, ¶ 7, 185 Vt. 129 (quotation omitted)). Courts "look at the language of the statute itself" and "presume the Legislature intended the plain, ordinary meaning of that statute." *Benson v. MVP Health Plan, Inc.*, 2009 VT 57, ¶ 4, 186 Vt. 97 (quotation omitted). "If the legislative intent is not clear on the face of the statute, Vermont courts construe the statute 'in light of the entire statutory scheme,' looking to 'the statute's purpose, effects, and consequences.'" *Vinson v. Clark*, No. 2:22-cv-00020, 2024 WL 4108524, at *16 (D. Vt. Sept. 6, 2024) (quoting *Estate of Daniels by & through Lyford v. Goss*, 2022 VT 2, ¶ 11, 216 Vt. 161). Moreover, "[i]n construing statutes to give effect to legislative intent, [courts] seek to harmonize statutes and not find conflict if possible." *Billewicz v. Town of Fair Haven*, 2021 VT 20, ¶ 22, 214 Vt. 511 (quotation omitted).

The statutory provision at the heart of this case is 17 V.S.A. § 2143, which states:

(a) If the board of civil authority of any political subdivision does not contain at least three members of each major political party and the party committee or at least three voters request increased representation for an underrepresented major political party by filing a written request with the clerk of the political subdivision, the legislative body shall appoint from a list of names submitted to it by the underrepresented party a sufficient number of voters to the board of civil authority to bring the underrepresented major party's membership on the board to three. A person's name shall not be submitted unless he or she consents to serve if appointed.

(b) The persons so appointed shall have the same duties and authority with respect to elections as have other members of the board, but those persons shall have no

4

authority with respect to functions of the board of civil authority that are not related to elections.

Under the plain language of the statute, it applies to *the* BCA of "any political subdivision," which includes cities, towns, and villages. Plaintiffs contend that the BRV is Burlington's BCA with respect to election-related matters and that § 2143 requires the BRV to include at least three members of the Republican Party. Opp. at 1. The City does not dispute that the Republican Party is a major political party, but it argues that § 2143 does not apply to the BRV because that section applies only to BCAs, and the BRV is not the City's BCA. Mot. at 2. Thus, the question for the Court to answer is whether the BRV is Burlington's BCA for purposes of § 2143. The Court concludes it is not.

Plaintiffs gloss over this question with little analysis, asserting simply that the City is subject to and must comply with state law. But this simply begs the question as to what Vermont law requires. As discussed above, Burlington created the BRV under its charter to perform the BCA's discrete, election-related task of compiling voter checklists. Its members are appointed by the BCA. In addition, Burlington has assigned other election-related responsibilities to ward clerks and inspectors of election, who are selected by the legal voters of each ward. Burlington's BCA retains control over and exercises any other duties regarding elections. City Charter § 43(a)(1). Thus, the BRV is not "the BCA" for the City; it is a separate and distinct entity.[3]

Plaintiffs do not argue that Burlington lacked the authority to create a separate BRV in its charter. "Municipalities in Vermont are 'created by the Legislature pursuant to express authority conferred by the Constitution' and their powers are 'expressly delegated to them by legislative enactment' such that they have 'no rights outside the limits of legislative control.'" *Ferry v. City of Montpelier*, 2023 VT 4, ¶ 45, 217 Vt. 450 (quoting *Town of Bennington v. Park*, 50 Vt. 178, 202 (1877)). The legislature is constitutionally empowered to "grant charters of incorporation, . . . [and] constitute towns, borroughs, cities and counties." Vt. Const. ch. II, § 6. Under Dillon's Rule, "the power of [a] municipality is limited to what has been granted [to it] by the state." *City of Montpelier v. Barnett*, 2012 VT 32, ¶ 20, 191 Vt. 441. Here, Burlington's city charter, together with its amendments, has been approved by the Legislature, and therefore it "has the force and effect of a statute as it applies to the specified municipality." *Handverger v. City of Winooski*, 2011 VT 130, ¶ 9, 191 Vt. 556 (citation omitted). The Court presumes that if the Legislature believed that Burlington's creation of the BRV was impermissible or conflicted with § 2143, it would not have granted its approval. *See In re O.R.G.*, 2026 VT 6, ¶ 15 ("We must presume that all language is inserted in a statute advisedly." (quotation omitted)); *Gallipo v. City of Rutland*, 173 Vt. 223, 235, 789 A.2d 942, 951-52 (2001) (explaining that a court should "harmonize statutes and not find conflict if possible," and "should not construe statutes to reach unreasonable results manifestly unintended by the legislature"); 82 C.J.S. Statutes § 363 (Apr. 2026 update) ("Courts presume that the legislature knew the law as it existed when it passed a

---

[3] Burlington has done something similar in other contexts, such as creating separate Boards of Tax Appeals and Abatement of Taxes to exercise the BCA's duties in those areas. *See* City Charter § 42 (providing that the "Mayor, City Council, and assessors shall constitute a Board for the Abatement of Taxes"), § 92(a) ("The Board of Tax Appeals shall meet, hear, and determine all appeals in the manner set forth in this section, notwithstanding 32 V.S.A. § 4404.").

statute and that the legislature intended the statute to be harmonious and consistent with the existing body of law.").[4]

Accordingly, because the BRV is not Burlington's BCA, there is no conflict between 17 V.S.A. § 2143 and City Charter § 43, nor any need to resort to tools of statutory construction. *See In re Porter*, 2012 VT 97, ¶ 10, 192 Vt. 601 (stating that, where the meaning of a statute "is clear, we enforce the statute according to its terms without resort to statutory construction"). However, if there were a conflict between the two laws, Burlington's "more specific city charter [would] control." *Looker v. City of Rutland*, 144 Vt. 344, 347, 476 A.2d 141, 143 (1984). In *Looker*, the Vermont Supreme Court held that the Rutland Board of Aldermen lacked the authority to issue a condemnation order, "because the city charter gives that authority to a Board of Highway Commissioners." *Id*. at 344, 476 A.2d at 142. The Court applied the "established rule of statutory construction . . . that when two statutes deal with the same subject matter, and one is general and the other specific, the more specific statute must be given effect unless the legislature intended the general to control." *Id*. at 346, 476 A.2d at 143 (citation omitted). The Court found that

> 19 V.S.A. § 292, giving selectmen the authority to alter highways, is the more general legislative provision. In granting to a Board of Highway Commissioners in Rutland the 'same power' to alter highways 'as is vested by law in selectmen,' the legislature clearly intended the more specific city charter to control over the more general statute.

*Id*. at 347, 476 A.2d at 143. Similarly, here, the more specific provision of the City's charter establishing the BRV to exercise responsibility for voter checklists and providing for the political composition of the board's members controls over the more general statutory provision of 17 V.S.A. § 2143. *See also Town of Brattleboro v. Garfield*, 2006 VT 56, ¶ 10, 180 Vt. 90 (resolving conflict between city charter and general statute concerning filling municipal vacancies, and concluding "that the charter prevails because it is more specific to the Town of Brattleboro than 24 V.S.A. § 963").[5]

In sum, the Court concludes that 17 V.S.A. § 2143 does not apply to Burlington's BRV, and therefore, no requirement exists that there be a minimum of three members from each major political party appointed to the BRV. Accordingly, Plaintiffs' claim fails as a matter of law, and the City's Rule 12(b)(6) motion is granted.

---

[4] Plaintiffs rely heavily on Burlington's 2021 decision to appoint two Republicans to the BRV upon request by the Republican party after invoking § 2143. However, statutory construction is an issue of law for the Court. Thus, the fact that the City previously voluntarily agreed to the type of relief Plaintiffs are now seeking is not binding on the Court, nor particularly relevant.

[5] Leaving Plaintiffs' nod to Shakespeare aside, the argument that *Looker* is merely about semantics and therefore supports Plaintiffs' position is without merit. *See* Opp. at 8-9.

<u>Order</u>

For the foregoing reasons, Defendant City of Burlington's Motion to Dismiss pursuant to Rule 12(b)(6) (Mot. #1) is GRANTED.

Electronically signed on May 20, 2026 at 11:38 AM pursuant to V.R.E.F. 9(d).

_____

Megan J. Shafritz
Superior Court Judge