Filed 06/22/26

VERMONT SUPERIOR COURT
Chittenden Unit
175 Main Street
Burlington VT 05402
802-863-3467
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 26-CV-2752

| | |
|---|---|
| VERMONTERS FOR CRIMINAL JUSTICE REFORM, INC., <br>        Plaintiff <br><br> v. <br><br> AGENCY OF HUMAN SERVICES, THE VERMONT DEPARTMENT OF HEALTH, DIVISION OF SUBSTANCE USE PROGRAMS, <br>        Defendant | DECISION ON MOTIONS |

## RULING ON PLAINTIFF'S MOTION FOR PRELMINARY INJUNCTION AND DEFENDANT'S MOTION TO DISMISS

Plaintiff Vermonters for Criminal Justice Reform, Inc. seeks a preliminary injunction that would enjoin the Vermont Department of Health from carrying out its planned grant funding award to a different organization – Vermont CARES – of all available opioid abatement settlement funding for syringe services programs in Burlington. That grant funding award follows the Howard Center's decision to stop providing such services effective June 30, 2026. This Court denied the related request for a temporary restraining order in a May 13, 2026 decision. Defendant opposes the preliminary injunction request and moves to dismiss. On June 8, 2026, the Court held a hearing on the preliminary injunction motion. For the reasons discussed below, Defendant's motion to dismiss is GRANTED and Plaintiff's preliminary injunction motion is DISMISSED AS MOOT.[1]

### Background

The following facts are alleged in the Complaint or were established at the preliminary injunction hearing. Plaintiff Vermonters for Criminal Justice Reform, Inc. ("VCJR") is a Vermont corporation that provides various on-site services related to public health and addiction, including medical care, overdose prevention, drug treatment, disease prevention and testing, and syringe services in Burlington. Defendant Department of Health (the "Department") administers grants and other programs related to public health and the services provided by VCJR.

---

[1] At the hearing, the Court gave Plaintiff until June 11 to file any supplemental briefing, but nothing further has been filed. Defendant indicated that it would not file a reply brief in further support of its motion to dismiss, so that motion became ripe as of the hearing.

"Syringe Services Programs" ("SSPs") distribute sterile syringes, safer drug use supplies, and needle disposal services. Howard Center currently operates the highest volume syringe program in Burlington, serving around 2,000 individual clients overall and about 90 clients per day. It is the recipient of a grant for such services using funds from the "Opioid Abatement Special Fund." *See* 18 V.S.A. § 4774(c)(8) (stating that priority for expenditures from the fund shall include "expanding syringe service programs, specifically providing comprehensive syringe services programs with more wraparound services, including linkages to opioid use disorder treatment, access to sterile syringes, and linkages to care and treatment of infectious diseases"). But in January of this year, Howard Center announced that it would stop operating its syringe program in Burlington on June 30, 2026. As a result, the Department needed to award grant funding to a different organization to avoid a lapse in syringe services.

VCJR was interested in obtaining additional grant funding to expand its syringe services. Despite intense lobbying by VCJR, Defendant instead awarded a substantial amount of grant funds from the Opioid Abatement Special Fund to a different organization called "Vermont CARES" for syringe services. VCJR has been awarded nothing from the Opioid Abatement Special Fund and $35,000 from the General Fund for fiscal year 2027, which it asserts is substantially less than is needed to serve its expected increase in syringe services clients. VCJR had apparently expected to receive between $100,000 and $300,000 from the opioid settlement funds.

VCJR had anticipated sharing those opioid settlement funds with Vermont CARES. It also argues that it is the better choice in Burlington for the funds than Vermont CARES because it currently offers syringe services seven hours per day, five days per week to approximately 100 individual clients, whereas Vermont CARES offers syringe services only one day per week for four hours. VCJR has already seen an increase in clients since Howard Center announced that it would cease providing syringe services.

VCJR brings this action pursuant to Rule 75 of the Vermont Rules of Civil Procedure and for declaratory and injunctive relief under the Declaratory Judgments Act. It asks the Court to declare that the Department acted in an arbitrary and capricious manner in violation of the Administrative Procedure Act, 3 V.S.A. § 800 et seq., because it could have and failed to create a competitive environment for the grant and because there is no factual or rational basis to award the funding entirely to Vermont CARES. VCJR further asks the Court to enjoin the Department from awarding the grant funds until it has undergone a "transparent competitive process" that results in a "publicly available factual basis" tied to its decision. Compl. at 12.

VCJR filed 18 exhibits along with its Complaint. At the hearing, it presented testimony from four witnesses: Vivan Bose-Pyne; Chrystal Rossi; Jessica Kirby; and Thomas Dalton. The Department presented testimony from Emily Trutor, and also admitted an internal memorandum recommending that the syringe service funding go to Vermont CARES.

<u>Discussion</u>

Plaintiff seeks a preliminary injunction. The Department seeks dismissal for lack of standing and contends that the Court should decide its motion to dismiss before addressing the

preliminary injunction motion. The Court agrees. A motion seeking dismissal for lack of standing is considered under Rule 12(b)(1), which addresses subject matter jurisdiction and therefore the Court's ability to hear this case as an initial matter.

I.      Motion to Dismiss

When considering a motion to dismiss for lack of subject matter jurisdiction, "all uncontroverted factual allegations of the complaint [are] accepted as true and construed in the light most favorable to the nonmoving party" and the court "may consider evidence outside the pleadings." *Mullinnex v. Menard*, 2020 VT 33, ¶ 8, 212 Vt. 432 (quotations omitted).

VCJR does not have standing to bring this case. Standing, of course, is a "constitutional doctrine, grounded in the Article III limitation of federal-court jurisdiction to actual cases and controversies," and Vermont has "adopted federal standing requirements." *Hous. Our Seniors in Vermont Inc. v. Agency of Com. & Cmty. Dev.*, 2024 VT 12, ¶ 12, 219 Vt. 80 (citing U.S. Const. art. III, § 2, cl. 1; *In re Constitutionality of House Bill 88*, 115 Vt. 524, 529, 64 A.2d 169, 172 (1949)). "[T]o have standing, a plaintiff must 'have suffered a particular injury that is attributable to the defendant and that can be redressed by a court of law.'" *Ferry v. City of Montpelier*, 2023 VT 4, ¶ 12, 217 Vt. 450 (quoting *Parker v. Town of Milton*, 169 Vt. 74, 77, 726 A.2d 477, 480 (1998)). Under this test, a plaintiff first must be able to show "injury in fact," meaning "the invasion of a legally protected interest." *Id.* ¶ 13 (citation omitted). "These requirements apply equally in an action seeking declaratory relief" and a plaintiff "must allege sufficient facts to establish standing on the face of the complaint." *Hous. Our Seniors in Vermont*, 2024 VT 12, ¶ 13 (quotation omitted).

Here, as in *Housing Our Seniors in Vermont*, VCJR has "not alleged an actual injury to any protected legal interest. Because [P]laintiff[] ha[s] no legal right to receive the grant funds or to have any specific procedure in the allocation of the grant funds," it has "not alleged a sufficient injury-in-fact." *Id.* ¶ 15. The *Housing Our Seniors* decision is instructive. There, unsuccessful grant applicants that sought to develop a senior housing project sued the Agency of Commerce and Community Development ("ACCD"), on grounds that ACCD improperly awarded another applicant a grant from a settlement fund program that arose from the EB-5 investment fraud scandal and that was established for funding economic development in Newport. In affirming the trial's court's dismissal for lack of standing, the Supreme Court explained that "[b]y their nature, grant programs involve limited disbursals of money and must pick some recipients over others." *Hous. Our Seniors*, 2024 VT 12, ¶ 16. The plaintiffs there cited "no statutory, contractual, common law, constitutional, or other legal provisions that would entitle them to receive any of these grant funds," nor did they "previously receive[] grants from this program in a manner that might establish an expectation or some threat of reputational injury." *Id.* In addition, given the discretionary nature of the grant program and lack of any controlling statutes, the plaintiffs "had no right to any specific procedure in the grant application process." *Id.* ¶ 19.

Similarly instructive is *Franklin County Sheriff's Office v. St. Albans City Police Department*, where the Sheriff's Office sued the St. Albans' City Police Department for submitting an "artificially low" bid in response to the Town of St. Albans' request for proposals

for law enforcement services. 2012 VT 62, ¶ 1, 192 Vt. 188. Affirming the trial court's dismissal, the Supreme Court held that the Sheriff's Office lacked standing "because it ha[d] no legally protected right to 'fair competition' with other statutorily created government entities to provide police services to the Town." *Id*. ¶ 15. The Court explained that "municipalities have discretion to enter into agreements for the provision of law enforcement services and may choose the provider in their own manner" and, "[c]onsequently, the Town was under no obligation to entertain bids for police services in the first instance, or to award the contract to the lowest bidder." *Id*. ¶¶ 15-16; *cf. Skaskiw v. Vt. Agency of Agric.*, 2014 VT 133, ¶ 21, 198 Vt. 187 (explaining, in due process context, that "[b]ecause a bidder has nothing more than a unilateral hope or expectation of securing a contract, a disappointed bidder typically has no legitimate claim of entitlement and thus no protected property interest."); *Hinesburg Sand & Gravel Co. v. State*, 166 Vt. 337, 343-45, 693 A.2d 1045, 1049-50 (1997) ("The government has a legitimate interest in making procurement decisions free from continuous litigation by suppliers who claim to have a better product. The judiciary cannot become the 'Consumer Reports' of the procurement business, enforcing product choices on a reluctant executive branch."); *Am. Envtl., Inc. v. Burlington Sch. Dist.*, No. 23-CV-54, 2023 WL 2137953, at *4 (Vt. Super. Ct. Feb. 04, 2023) (Toor, J.) (suggesting, in competitive bidding context, "that Vermont might not recognize a disappointed bidder's right to challenge a bid award").

While VCJR may well have been the most qualified entity to provide the SSP services, it has no legal right to the funding. This was a discretionary decision by the Department of Health. VCJR argues that the Department "failed to issue an RFP, to require an application by its anticipated grantee, Vermont CARES, or articulate any factual or rational basis for its decision," and that this constitutes abuse of discretion and is arbitrary under the Vermont Administrative Procedure Act. Mot. for Prelim. Injunct. at 10 (citing 3 V.S.A. § 801(b)(13)(A)). The problem with VCJR's argument, however, is that it points to no legal requirement that the Department engage in a competitive process before awarding the grant or articulate the factual basis for its grant award.[2]

The "Opioid Abatement Special Fund" statute does not require a competitive bidding process or that the Department issue a request for proposals. Instead, it provides merely that "The Department shall disburse monies from the opioid Abatement Special Fund pursuant to 32 V.S.A. chapter 7, subchapter 3." 18 V.S.A. § 4774(a)(2). The referenced provision of Title 32 involves disbursement of state funds generally. 32 V.S.A. §§ 461-76. The Opioid Abatement Fund statute further requires that funds must be spent for certain activities, that priority for expenditures shall be aimed at preventing overdose deaths, and that expenditures "shall supplement and not supplant or replace" existing or future government funding. 18 V.S.A. § 4774(a)(3), (b), (c). But the statute does not require any specific competitive process for disbursing the funds.

VCJR relies on "Bulletin No. 5, Policy for Grant Issuance and Monitoring" (Ex. 16) and the Department's "Grant Plan" (Ex.17), a set of Agency guidance that describes the process

---

[2] Nor is VCJR's assertion necessarily correct, as discussed further below, that the Department "has a statutory obligation not to act in an arbitrary manner when taking agency action," PI Reply at 3, at least in the present context. *See infra* at 6-7.

4

agencies follow for awarding and administering grants. This internal guidance also does not require a competitive process. Rather, it states that discretionary grants are awarded "often in a competitive environment" and that grantees are selected "in a competitive environment," "to the extent possible." Ex. 16, § 6.1.2; Ex. 17 at 4. The guidance seems to contemplate that a grant application is generally required, and that agencies must maintain an up-to-date grant file that includes the grant application. VCJR argues that the Department does not have a grant application for Vermont CARES because Vermont CARES never applied for the grant. It also argues that it was "possible" to undergo a competitive process before awarding this grant because Howard Center announced that it would stop providing syringe services back in January. However, such circumstances still do not demonstrate that VCJR has any protected legal interest here, and the Court cannot second-guess the "possibility" of engaging in a competitive process. Moreover, in its Reply, as well as during oral argument, Plaintiff failed to engage with any of the apposite caselaw cited by the Department.

Finally, Plaintiff argues that if the Department had followed "a competitive and transparent grant process in this instance, it would have collected and produced documentation that VCJR is the best-suited and most-qualified organization in Burlington, once Safe Recovery closes, to provide [syringe] services to the most people, for the most hours, in the safest and most professional manner." PI Reply at 6. Again, even if that is true, it does not establish a protected legal interest here sufficient to demonstrate injury-in-fact for standing purposes because the Department clearly has discretion in awarding the grant funds. Controlling Vermont caselaw compels dismissal of this matter for lack of standing. *See Hous. Our Seniors in Vermont*, 2024 VT 12, ¶¶ 15-19; *Franklin Cnty. Sheriff's Off.*, 2012 VT 62, ¶ 1.

II.     Motion for Preliminary Injunction

Further, even assuming Plaintiff had standing, it would not be entitled to preliminary injunctive relief. "A preliminary injunction is an extraordinary remedy never awarded as of right." *Taylor v. Town of Cabot*, 2017 VT 92, ¶ 19, 205 Vt. 586 (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). In considering such a request, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id.* (quotation omitted). The movant bears the burden of establishing that the relevant factors call for imposition of a preliminary injunction. *Id.* There are four main factors guiding this review under Vermont law: "(1) the threat of irreparable harm to the movant; (2) the potential harm to the other parties; (3) the likelihood of success on the merits; and (4) the public interest." *Id.* (footnote omitted).

A. Irreparable Harm

VCJR contends that the lack of a grant award will result in irreparable harm to its services, operations, and clients. It asserts that it "will be stretched to serve those needing SSP and related services in a way that is untenable and threatens the viability of its programming." Mot. at 9. As the Court previously discussed in denying the request for a temporary restraining order, VCJR has not established irreparable harm, and the evidence presented at the hearing does not change that conclusion.

As indicated in the earlier ruling, Plaintiff does not claim a loss of existing funding, but instead a missed opportunity to procure additional funding that could disrupt its plans to expand in order to assist additional clients. When asked about the funding decision's impact, Plaintiff's Executive Director, Tom Dalton, testified at the hearing that VCJR will now have to prioritize its funding, that it will not be able to provide the same level of comprehensive services that clients "do best with," and that future organizational planning will be more difficult. While VCJR's officers and employees are understandably frustrated and concerned about what this means for its current and future clients, these impacts do not constitute irreparable harm. *See Groundworks Collaborative, Inc. v. Vt. Agency of Human Servs.*, No. 24-CV-00999, 2024 WL 1344378, at *3 (Vt. Super. Ct. Mar. 22, 2024) (Toor, J.) (citing *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 678 (9th Cir. 2021); *Downtown Soup Kitchen v. Municipality of Anchorage*, 406 F. Supp. 3d 776, 797 (D. Alaska 2019)).

Moreover, in its Reply in further support of its preliminary injunction motion, VCJR argues only that it "has suffered the loss of a fair opportunity to compete for funds for which is it superiorly qualified for and has been intentionally excluded from important information that the Defendant would have had to make public if it proceeded with a competitive grant process." PI Reply at 4. It further contends that it has been "deprived . . . of the transparency and accountability required by both rule and statute and expected by Vermonters and the Legislature." *Id*. (citing 1 V.S.A. § 315(a)). Again, those arguments do not constitute irreparable harm for purposes of preliminary injunctive relief, and the only rule or statute that VCJR cites is the statement of policy regarding access to public records.

B. Likelihood of Success on the Merits

VCJR also cannot establish a likelihood of success on the merits. As discussed above in the context of the motion to dismiss, it does not have standing to pursue this claim.

Even moving beyond standing, VCJR likely cannot succeed on the merits. Its reliance on the Administrative Procedure Act seems to be misplaced. The Act's definition of "arbitrary," 3 V.S.A. § 801(b)(13)(A), appears to encompass only agency "rulemaking" and "contested cases," of which a discretionary grant award is neither. Contrary to VCJR's assertion, the Act contains no general prohibition on an agency acting in an arbitrary way. VCJR brings this action pursuant to Rule 75, which provides a procedure applicable when review "is available as a matter of general law by proceedings in the nature of certiorari, mandamus, or prohibition." V.R.C.P. 75, Reporter's Notes. The only type of relief seemingly applicable here would be relief in the nature of mandamus, which is only available to compel a ministerial duty. *See generally Petition of Fairchild*, 159 Vt. 125, 130, 616 A.2d 228, 231 (1992). Again, however, VCJR identifies no such ministerial duty that the Department violated in awarding the grant to Vermont CARES rather than VCJR.

Additionally, mandamus review is available for "allegedly arbitrary abuses of discretion that amount to a practical refusal to perform a certain and clear legal duty." *Rose v. Touchette*, 2021 VT 77, ¶ 13, 215 Vt. 555 (quotation omitted). But VCJR identifies no actions that satisfy this standard. It contends that the Department acted arbitrarily and abused its discretion by awarding the funds to Vermont CARES without accepting applications or undergoing a

competitive process, and by failing to articulate any rationale for its decision. But as the Court has discussed, the Department had no "certain and clear legal duty" to take those actions. Moreover, the Department's Exhibit A submitted at the hearing indicates that it can establish some rational basis for awarding the grant to Vermont CARES.

C. Potential Harm to Other Parties and the Public Interest

VCJR argues that the impact of an injunction on the Department and third parties would be minimal because it seeks only a negative injunction to maintain the status quo, and that the public interest will be harmed in the absence of an injunction because public health outcomes, public safety, individual clients' wellbeing, and progress with the opioid crisis will all be threatened. Mot. at 10-11. However, where plaintiffs "are unlikely to succeed on the merits," these arguments "hold[] little weight." *Vermont Fed'n of Sportsmen's Clubs v. Birmingham*, 741 F. Supp. 3d 172, 216 (D. Vt. 2024). The Department argues that the balance of the equities and the public interest strongly weigh against the proposed injunction because the injunction would "disrupt the granting process, delay the implementation of [] important services, and adversely affect the health and safety of Vermonters." Opp'n at 6. It further notes that because there would be a delay of at least one month after such an injunction were lifted before another organization could start providing syringe services, there would be a gap in these services that would endanger public health. Consequently, the Court finds these factors would not tip the balance in favor of a preliminary injunction here.

Lastly, the Court observes that addiction and substance abuse continue to be a pervasive problem in our community for which robust and effective syringe service programs are desperately needed. It is unfortunate that the Department appears to have conducted its grant award process in a manner that was less than fully transparent to a seemingly capable and willing SSP provider, causing concerns about its ability to meet the needs of its growing client base and fulfill its fundamental mission. The problems with this process, however, are matters for the executive branch and legislature to resolve rather than the Court. Thus, if Plaintiff remains motivated to pursuing "fairness" and "transparency" in future distributions of opioid settlement funds, it may wish to raise its concerns with those bodies who have the authority to make changes to the grant award process.

Order

Defendant's Motion to Dismiss (Mot. # 2) is GRANTED. Plaintiff's Motion for Preliminary Injunctive Relief (Mot. # 1) is DISMISSED AS MOOT.

Electronically signed on June 18, 2026 at 5:13 PM pursuant to V.R.E.F. 9(d).

_____
Megan J. Shafritz
Superior Court Judge

7